1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   KENNETH PITCHFORD,            )   NO. EDCV 09-279 SS
                                   )
12              Plaintiff,         )
                                   )   **MEMORANDUM DECISION AND ORDER**
13         v.                      )
                                   )
14   MICHAEL J. ASTRUE,            )
     Commissioner of the Social    )
15   Security Administration,      )
                                   )
16              Defendant.         )
     _____)

17

18                              **I.**

19                          **INTRODUCTION**

20

21        Kenneth Pitchford ("Plaintiff") brings this action seeking to

22   overturn the decision of the Commissioner of the Social Security

23   Administration (hereinafter the "Commissioner" or the "Agency") denying

24   his applications for Supplemental Security Income ("SSI") and Disability

25   Insurance Benefits ("DIB").  The parties consented, pursuant to 28

26   U.S.C. § 636(c), to the jurisdiction of the undersigned United States

27   Magistrate Judge.  For the reasons stated below, the decision of the

28   Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff protectively filed applications for SSI and DIB on March 18, 2004.[1] (Administrative Record ("AR") 48-50, 235, 391). He alleged a disability onset date of November 20, 2003 (AR 48) due to depression and anxiety. (AR 58). The Agency denied Plaintiff's claims for SSI and DIB initially on August 12, 2004. (AR 19-23). This denial was upheld upon reconsideration on November 16, 2004. (AR 26-30).

On February 2, 2006, a hearing was held before Administrative Law Judge ("ALJ") Joseph D. Schloss. (AR 236-52). The ALJ denied benefits in a written decision dated April 27, 2006. (AR 8-16). On May 4, 2006, Plaintiff sought review of the unfavorable decision. (AR 7). The Appeals Council declined review on July 21, 2006. (AR 4-6).

Plaintiff filed a complaint in District Court, seeking review of the Commissioner's decision (Case No. EDCV 06-978 SS). On August 14, 2007, the Court remanded the case for further proceedings, reasoning that the ALJ had failed to properly consider the lay witness testimony of Plaintiff's mother. (AR 293-305). On December 26, 2007, the Appeals Council remanded the matter for further proceedings pursuant to the District Court's August 14, 2007 order. (AR 306-08).

---

[1] Plaintiff previously filed an application for DIB on September 14, 2001. (AR 11). The claim was denied at the initial level and no appeal was filed. (Id.).

On April 17, 2008, ALJ Jesse J. Pease held a second hearing.  (AR 405-46).  The ALJ held a supplemental hearing on September 4, 2008.  (AR 392-404).  The ALJ again denied benefits on November 4, 2008.  (AR 253-62).  Plaintiff commenced the instant action on February 17, 2009.

## III.

### FACTUAL BACKGROUND

**A.   Generally**

Plaintiff was born on December 24, 1946, and was 61 years old at the time of the September 4, 2008 hearing.  (AR 48, 392).  He has a bachelor's degree in geology and past relevant work experience as a geologist.  (AR 59, 64, 261, 397-98).

**B.   Relevant Medical History**

**1.   Treating Physician**

In or about October 1988, Plaintiff was involved in a motorcycle accident that resulted in multiple injuries including a fracture of the right femur and a fracture dislocation of the right forefoot.  (AR 116).  On March 1, 2000, Plaintiff began receiving treatment from Dr. Richard Gordinier, a family practitioner, for his depression.  (AR 189, 191-92).  On that date, Dr. Gordinier prescribed Effexor.  (AR 191).  On August 6, 2001, Dr. Gordinier changed Plaintiff's prescription from Effexor to Prozac after Plaintiff reported that Effexor was not working.  (AR 188).  On September 10, 2001, he noted that Plaintiff had improved on Prozac

3

(AR 186), and on November 19, 2003, he commented that Plaintiff was doing well on Prozac.  (AR 182).  However, on December 1, 2003, Plaintiff reported that he was not getting better.  (AR 181).

On June 1, 2004, Plaintiff complained of depression and anxiety. (AR 175).  On that date, Dr. Goridinier wrote on a prescription pad that Plaintiff had "long standing bipolar disease with panic attacks" and that "medication help[ed] but d[id] not ease this problem." (AR 174). On August 3, 2004, Dr. Gordinier reported that during office visits, Plaintiff was alert and appropriate, cooperated with keeping appointments, was able to follow simple instructions, and got along with others.  (AR 208-09).  He noted that he saw "some" signs or symptoms of a mental impairment but did not refer Plaintiff to a mental health professional.  (AR 209).  On November 26, 2007, Dr. Gordinier discontinued Prozac and again prescribed Effexor after Plaintiff reported problems with Prozac.  (AR 380).

## 2.   Consultative Examining Physicians

On February 14, 2002, Dr. Ernest Bagner conducted a psychiatric evaluation of Plaintiff.  (AR 154-57).  Plaintiff complained of mood swings with anger outbursts, anxiety, helplessness, and hopelessness. (AR 154, 157).  He stated that he had previously suffered a head trauma that resulted in a coma and right facial surgery.  (AR 155).  Plaintiff also reported a history of marijuana use and incarcerations for marijuana possession and public nuisance.  (Id.).  A mental status examination revealed: Plaintiff reported feeling "dysphoric"; his affect was mood congruent; his speech was intact and coherent but decreased in

4

rate, rhythm, and volume; his thought processes were tight with no flight of thought, looseness of association, thought blocking, or distractibility; his fund of knowledge was slightly impaired[2]; he appeared to be of average intelligence; he was alert and oriented to person, place, and time; he denied suicidal or homicidal ideation; he appeared to have normal reality contact; he did not display evidence of auditory or visual hallucinations, or paranoid or grandiose delusions; his memory and concentration were intact; his abstractions were intact; and his insight and judgment were fair. (AR 156). Dr. Bagner assessed a Global Assessment of Functioning ("GAF") score of 73[3] and diagnosed Plaintiff with mood disorder, not otherwise specified, and "rule out" marijuana deprendency. (AR 156-57). He found that Plaintiff would have mild limitations interacting with supervisors, peers, and the public; mild limitations handling normal stresses at work; and no limitations maintaining concentration and attention, completing simple and complex tasks, or completing a normal workweek without interruption. (AR 157).

---

[2]   Plaintiff was able to name the current president of the United States and one of the two preceding presidents. (AR 156).

[3]   A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereinafter "DSM IV").

A GAF of 71 to 80 is indicative of situations where, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork.)." DSM IV at 34.

On July 2, 2004, Dr. Louis Fontana administered another psychiatric evaluation of Plaintiff. (AR 203-07). Plaintiff reported that he was involved in a motorcycle accident in 1988 which left him with significant loss of consciousness and delirium for approximately two weeks. (AR 204). He stated that he underwent neurosurgery but did not know the location of the stigmata of his surgery. (Id.). Plaintiff complained of difficulty focusing and poor anger control since the accident. (AR 203-04). Plaintiff noted that he had never seen a psychiatrist. (Id.).

Dr. Fontana performed a mental status examination which revealed the following: Plaintiff had good eye contact; he was cooperative; his mood was "somewhat dysphoric"; his affect was full and appropriate; his speech was of normal tone and meter; his thought processes were logical and goal-directed; he did not display any evidence of hallucinations or delusions; he denied any suicidal or homicidal ideation; he was oriented to person, place, and time; and his memory, fund of knowledge, calculations, abstract thinking, judgment, and insight were intact. (AR 205-06). Dr. Fontana diagnosed Plaintiff with "[d]ementia [d]ue to [h]ead [i]njury[] [w]ith [b]ehavioral [d]isturbance" and assessed a GAF score of 55.[4] (AR 206). He opined that Plaintiff should be able to: perform simple and repetitive tasks, as well as more detailed and complex tasks; accept instructions from supervisors; interact appropriately with coworkers and the public; perform work activities on

---

[4] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM IV at 34.

a consistent basis without additional supervision; maintain regular attendance in the workplace; and complete a normal workday/workweek. (Id.).

### 3.   Medical Experts

At the April 17, 2008 hearing, Drs. David Glassmire and William DeBolt testified as medical experts. (AR 417-34). Dr. Glassmire, a psychologist, testified that Plaintiff had a depressive disorder, not otherwise specified, and a provisional cognitive disorder, not otherwise specified. (AR 418-19). He explained that he gave a provisional diagnosis of cognitive disorder because, although Dr. Fontana diagnosed dementia due to head injury with behavioral disturbance, Dr. Fontana's mental status evaluation did not reveal any significant cognitive problems. (AR 421). Dr. Glassmire also noted that the record did not contain any significant treatment records for psychological issues. (AR 422). He concluded that from November 20, 2003 through December 31, 2006, Plaintiff would be limited to "moderately complex tasks that are up to three to four step instructions" with "non[-]intense contact with others." (AR 420).

Dr. DeBolt, a neurologist and psychiatrist, testified that Dr. Fontana's diagnosis of dementia could not be substantiated without neuropsychological testing. (AR 425). Dr. DeBolt opined that there was "some question about [Plaintiff's] credibility" due to Plaintiff's unsubstantiated statements concerning his head trauma and his inconsistent statements regarding his drug use and incarcerations. (AR 426). Specifically, he noted that the treatment records did not support

Plaintiff's assertions to the consultative examining physicians that he had suffered a severe head injury which resulted in a coma. (AR 425-26). Furthermore, Dr. DeBolt noted that Plaintiff reported a history of drug use and incarcerations to Dr. Bagner but not to Dr. Fontana. (AR 426). He concluded that he could not give an opinion on Plaintiff's mental capacity because the "issue of coma is simply not supported within the medical record." (AR 428-29). Dr. DeBolt testified that, assuming Plaintiff had never suffered a coma, Plaintiff did not have any mental impairment from November 20, 2003 through December 31, 2006. (AR 429-30).

**C.   Plaintiff's Testimony**

At the February 2, 2006 hearing, Plaintiff testified that he suffered from depression, anxiety, and panic attacks. (AR 240-41). He stated that he had difficulty maintaining focus. (AR 247). Plaintiff noted that he frequently left work due to anxiety. (AR 248-49).

At the April 17, 2008 hearing, Plaintiff testified that, after talking to his friends and family, he learned that he had been unconscious for two to three weeks following his motorcycle accident. (AR 434). He noted that when he woke up, he was unable to walk or talk. (AR 435). Plaintiff stated that he did not have any recollection of a head injury but was told that he had suffered such an injury. (AR 435-36). He did recall that he had suffered a broken leg. (AR 436). Plaintiff noted that the motorcycle accident left his helmet with marks on the back and right side. (AR 442).

8

1    Plaintiff testified that while his disability case had been
2    pending, he worked, intermittently, as a geological consultant.  (AR
3    242-45, 409-13).  In particular, he note that he earned $4,600 in 2006
4    and $36,000 in 2007.  (AR 410-11).  Plaintiff stated that the increase
5    in his income from 2006 to 2007 was not the result of his improved
6    condition but rather due to willpower - specifically, forcing himself
7    to work.  (AR 411-12).

8
9                               **IV.**
10          **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**
11
12    To qualify for disability benefits, a claimant must demonstrate
13    a medically determinable physical or mental impairment that prevents him
14    from engaging in substantial gainful activity[5] and that is expected to
15    result in death or to last for a continuous period of at least twelve
16    months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing
17    42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
18    incapable of performing the work he previously performed and incapable
19    of performing any other substantial gainful employment that exists in
20    the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir.
21    1999) (citing 42 U.S.C. § 423(d)(2)(A)).

22
23    To decide if a claimant is entitled to benefits, an ALJ conducts
24    a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as
25    follows:

26    _____
27         [5]  Substantial gainful activity means work that involves doing
      significant and productive physical or mental duties and is done for pay
28    or profit.  20 C.F.R. §§ 404.1510, 416.910.

                                  9

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of

10

establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[6] age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue - from November 20, 2003 through December 31, 2006.[7]   (AR 255, 257).

---

[6]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."   20 C.F.R. §§ 404.1545(a), 416.945(a).

[7]   The ALJ noted that Plaintiff has admitted that he had engaged in substantial gainful activity since the end of 2006 and agreed to have the ALJ consider a closed period of disability from November 20, 2003 through December 31, 2006.   (AR 255, 257).

11

At step two, the ALJ determined that, during the period at issue, Plaintiff had the severe impairment of depressive disorder, not otherwise specified.  (AR 257).

At step three, the ALJ concluded that, during the period at issue, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (AR 258).

At step four, the ALJ found that, during the period at issue, Plaintiff retained the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: three or four step instructions with no intense contact with others." (AR 260).   The ALJ determined that Plaintiff was not capable of performing his past relevant work as a geologist.  (AR 261).

At step five, the ALJ considered Plaintiff's RFC, work experience, education, age.  (AR 261-62).  He also considered the testimony of the vocational expert that a person in Plaintiff's circumstances would be able to perform the requirements of occupations such as hand packager, office helper, and small products assembler.  (Id.).  The ALJ found that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy during the period at issue."  (AR 262).   Therefore, the ALJ concluded that Plaintiff was not disabled from November 20, 2003 through the date of this decision.  (Id.).

///

///

///

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

///
///
///
///
///
///
///

13

1

**VII.**

**DISCUSSION**

**A.    The ALJ Properly Considered The Treating Physician's Opinion**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Gordinier's statements written on a June 1, 2004 prescription pad, indicating that Plaintiff had longstanding bipolar disorder with panic attacks. (Jt. Stip. at 3-5). This Court disagrees.

Although a treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007) (quoting Reddick, 157 F.3d at 725).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence. See Magallanes v. Bowen, 881 F.2d 747, 751, 753-55 (9th Cir. 1989) (noting

14

that the court may draw inferences from the ALJ's discussion of the evidence in the record that reveal his rationale).

Here, the ALJ properly considered the treatment records from Dr. Gordinier. Specifically, the ALJ noted that "[t]here are no formal mental status examination findings, and except for infrequent changes in medication due to complaints about increased depression and anxiety, there is no report of any symptoms." (AR 258). He also noted Dr. Gordinier's observations that during office visits, Plaintiff was alert and appropriate, cooperated with keeping appointments, was able to follow simple instructions, and interacted well with others. (Id.). The ALJ further observed that, although Dr. Gordinier saw some signs or symptoms of a mental impairment, Dr. Gordinier never considered referring Plaintiff to a mental health practitioner. (Id.).

The ALJ was not required to specifically discuss Dr. Gordinier's notation of "longstanding bipolar disorder with panic attacks." First, Dr. Gordinier's diagnosis was not probative of Plaintiff's functional limitations. See Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir. 1981) (the mere existence of a functional impairment is insufficient to justify an award of disability benefits, but rather there must be proof of the impairment's disabling severity). Moreover, the diagnosis was not supported by any clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Therefore, the ALJ was not required to discuss why Dr. Gordinier's finding of longstanding bipolar disorder with panic attacks should have

15

1   been rejected.[8]   See Howard ex rel. Wolff ("Wolff") v. Barnhart, 341

2   F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ is not required to discuss

3   evidence that is neither significant nor probative"); Vincent v.

4   Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ need not discuss

5   all evidence but must explain why "significant probative evidence has

6   been rejected") (citation omitted).   Accordingly, remand is not

7   warranted on this claim.

8

9   **B.   The ALJ Properly Considered The Severity Of Plaintiff's Mental**

10      **Impairment**

11

12      Plaintiff argues that the ALJ improperly found that Plaintiff's

13  mental impairment was not severe. (Jt. Stip. at 8-9).   In support of

14  this contention, Plaintiff points to Dr. Gordinier's statements that

15  Plaintiff had "long standing bipolar disease with panic attacks" and

16  that "medication help[ed] but d[id] not ease this problem." (Jt. Stip.

17  at 8).   The Court finds that the ALJ properly considered the severity

18  of Plaintiff's mental impairment.

19

20      By its own terms, the evaluation at step two is a de minimis test

21  intended to weed out the most minor of impairments.   See Bowen v.

22  Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119

23  (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)

24  (stating that the step two inquiry is a de minimis screening device to

25

26      [8]   Furthermore, the ALJ specifically addressed Leslie Pitchford's
27  (Plaintiff's sister) finding of bipolar disorder. (AR 259).   The ALJ
    found that Ms. Pitchford's finding was not supported by any clinical
28  finding. (Id.).

16

1   dispose of groundless claims) (quoting Smolen, 80 F.3d at 1290).   An
2   impairment is not severe only if the evidence establishes a slight
3   abnormality that has only a minimal effect on an individual's ability
4   to work.   Smolen, 80 F.3d at 1290 (internal quotations and citations
5   omitted).

7       Here, the ALJ did find that Plaintiff had a severe mental
8   impairment, namely, depressive disorder, not otherwise specified.   (AR
9   257).   Indeed, he noted that "[t]here has been no dispute that
10  [Plaintiff's] depressive disorder has resulted in more than mild
11  limitations[.]"   (AR 258).   Thereafter, the ALJ continued beyond step
12  two of the sequential evaluation.   (AR 258-62).   Thus, Plaintiff's
13  contention that the ALJ found Plaintiff's mental impairment not severe
14  is incorrect and not supported by the record.

16      To the extent Plaintiff contends that the ALJ should have
17  specifically found bipolar disorder and panic attacks to be severe,
18  Plaintiff's contention fails.   As discussed above, Dr. Gordinier's
19  findings were not supported by any clinical findings and were not
20  probative of Plaintiff's functional limitations.   See Rhodes, 660 F.2d
21  at 723; see also Thomas, 278 F.3d at 957.   Thus, substantial evidence
22  would have supported the ALJ's finding that bipolar disorder and panic
23  attacks, if there were probative evidence that Plaintiff even suffered
24  from these conditions, were not severe impairments.   Even if the ALJ
25  erred, however, in his conclusion regarding the severity of Plaintiff's
26  bipolar disorder and panic attacks, the error was harmless.   Stout v.
27  Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).   As Dr.
28

17

1   Gordinier's findings did not support any greater limitations, it would
2   not have altered the ALJ's conclusions regarding Plaintiff's RFC.

3

4   **C.   The ALJ Properly Discounted Plaintiff's Subjective Symptom**
5        **Testimony**

6

7        Plaintiff contends that the ALJ failed to properly assess
8   Plaintiff's subjective allegations of disabling symptoms. (Jt. Stip.
9   at 10-11). Specifically, he alleges that the ALJ failed to specifically
10  explain whether he accepted or rejected Plaintiff's subjective
11  complaints. (Jt. Stip. at 10). Plaintiff also contends that the ALJ
12  failed to make proper credibility findings. (Jt. Stip. at 10). The
13  Court finds Plaintiff's contentions meritless.

14

15       To determine whether a claimant's testimony regarding subjective
16  pain or symptoms is credible, an ALJ must engage in a two-step analysis.
17  First, the ALJ must determine whether the claimant has presented
18  objective medical evidence of an underlying impairment "which could
19  reasonably be expected to produce the pain or other symptoms alleged."
20  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing
21  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc))
22  (internal quotation marks omitted). The claimant, however, "need not
23  show that her impairment could reasonably be expected to cause the
24  severity of the symptom she has alleged; she need only show that it
25  could reasonably have caused some degree of the symptom." Id. (quoting
26  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

27

28

18

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

The ALJ may consider the following factors when weighing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Contrary to Plaintiff's contention, the ALJ expressly found Plaintiff's subjective complaints "not credible to the extent they are inconsistent with the above [RFC] assessment." (AR 260). The ALJ also provided legally sufficient reasons for rejecting Plaintiff's subjective complaints. First, the ALJ found that, despite Plaintiff's allegations of a head trauma, "there has been scant evidence of anything resembling the type of injury being alleged by [Plaintiff] in terms of there being a prolonged coma let alone neurosurgery." (AR 260-61). Second, the ALJ found that, although Plaintiff alleged disabling depression and anxiety, the findings of the treating and examining physicians indicated "only mild to moderate problems, and the moderate findings were based on a history which was inconsistent with the other histories of record as well as being internally inconsistent since [Plaintiff] alleged neurosurgical treatment of his head trauma, but he could not identify the site of such surgery." (Id.). Third, the ALJ found that despite

19

Plaintiff's complaints of ongoing serious problems, he managed to earn $37,000 in 2007 as a geologist. (Id.). Although Plaintiff's earnings in 2007 did not fall within the relevant time period, the inconsistency between Plaintiff's assertion that he continued to remain disabled in 2007 and his earnings that year reflected negatively on his credibility. Plaintiff's daily activities, watching television, reading, and playing the piano, were also inconsistent with his claims of disability. (AR 14).

The ALJ provided multiple clear and convincing reasons for his decision to give less weight to Plaintiff's subjective evidence. The ALJ found that Plaintiff's alleged disabling depression and anxiety were inconsistent with his own statements and the findings of the treating and examining physicians. (AR 261). The ALJ also noted that Plaintiff's complaints were inconsistent with his work record. (Id.). By highlighting such inconsistencies, the ALJ has adequately demonstrated that Plaintiff's credibility was suspect. In addition, the ALJ found that Plaintiff had failed to present objective medical evidence of his head trauma, which could have been reasonably expected to produce Plaintiff's alleged symptoms. (AR 260-61). Thus, the ALJ provided the legally sufficient reasons necessary to disregard such testimony.

**D.   The ALJ Properly Considered The Side Effects Of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to properly consider the side effects of his medication. (Jt. Stip. at 14-15). He notes that

he has been prescribed multiple medications, including Effexor, Prozac, Lotrel, Lotensin, Plendil, Nicaripine, Diltiazem, Varapamil, and Altace. (Jt. Stip. at 14). In particular, Plaintiff argues that he reported in his disability report that Effexor caused sleeping problems. (Jt. Stip. at 14; AR 63). The Court disagrees with Plaintiff's argument.

The "type, dosage, effectiveness, and side effects" of any medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); see also Social Security Ruling ("SSR") 96-8p, available at, 1996 WL 374184; SSR 96-7p, available at, 1996 WL 374186. However, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); Thomas, 278 F.3d at 960 (upholding the ALJ's rejection of the plaintiff's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible). Plaintiff has not met his burden in this case.

Here, Plaintiff offers no objective evidence that his medications interfered with his ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects not "severe enough to interfere with [a plaintiff's] ability to work" are properly excluded from consideration). The treatment notes do not contain any reference to

21

side effects caused by Plaintiff's medications.  The only reference to medication side effects is contained in Plaintiff's disability report, in which he reported that Effexor caused sleeping problems.  (AR 63). However, during the time period at issue - from November 20, 2003 through December 31, 2006 - Plaintiff was not prescribed Effexor.  Thus, the alleged side effects of Effexor are irrelevant to Plaintiff's current claim.[9]

The Court notes that Plaintiff admitted to ongoing marijuana use. (AR 155).  He reported "being arrested many times and incarcerated four to five times for marijuana possession and public nuisance."  (Id.). Plaintiff's contentions that his medications render him tired or sleep impaired are undermined by his admission of regular marijuana use as it would be difficult to determine which substance, if any, caused the alleged side effects.

Accordingly, Plaintiff has failed to put forth clinical evidence showing that his medications affected his ability to sustain employment. As such, the ALJ was not required to discuss any of the medications' side effects.  See Wolff, 341 F.3d at 1012; Vincent, 739 F.2d at 1394-95.

---

[9] Even if Effexor had been prescribed during the relevant period, the claimed side effects, unsupported by medical evidence, were no more than additional subjective complaint testimony, which the ALJ properly discounted in his credibility analysis.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness side-effect of [claimant's] medication" in making an RFC determination as "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints").

1

**VIII.**

2

**CONCLUSION**

3

4      Consistent with the foregoing, and pursuant to sentence four of 42

5   U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the

6   decision of the Commissioner and dismissing this action with prejudice.

7   IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

8   Order and the Judgment on counsel for both parties.

9

10  DATED: September 25, 2009.

11                                        /S/

12                                  _____

13                                  SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26      [10]   This sentence provides: "The [district] court shall have power

27  to enter, upon the pleadings and transcript of the record, a judgment
    affirming, modifying, or reversing the decision of the Commissioner of

28  Social Security, with or without remanding the cause for a rehearing."